# No. 23-50262

In the
**United States Court of Appeals
For the Fifth Circuit**

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

v.

**THOMAS ALAN ARTHUR,**

**Defendant-Appellant.**

**On Appeal from the United States District Court
for the Western District of Texas**
_____

**Appellee's Brief for the United States of America**
_____

**Jaime Esparza
United States Attorney**

**Mark Randolph Stelmach
Assistant United States Attorney
Western District of Texas
601 N.W. Loop 410, Suite 600
San Antonio, Texas 78216
(210) 384-7090 / (210) 384-7031**

**Attorneys for Appellee**

## Recommendation on Oral Argument

The United States of America agrees with Appellant Arthur that oral argument would not significantly aid the decisional process in this case. The issue raised on appeal can be determined upon the briefs that adequately present the record and legal arguments relevant to this appeal.  See Fed. R. App. P. 34(a)(2)(C).

# Table of Contents

**Pages**

Recommendation on Oral Argument ..............................................................ii

Table of Authorities ..................................................................................iv

Jurisdiction ................................................................................................1

Statement of the Issue ................................................................................1

Statement of the Case ................................................................................1

Statement of Facts ......................................................................................1

Summary of the Argument ........................................................................11

Argument and Authorities ........................................................................13

     Where Arthur's correctly calculated advisory sentencing guidelines range for Counts Two through Nine was imprisonment for 360 months to 840 months, the district court's within-guidelines sentence of 480 months, the same sentence he received at the prior sentencing for Counts One through Nine, under the same advisory guidelines, was not a sentence grossly disproportionate to his crimes. ............................13

Standard of Review ..................................................................................13

Conclusion..............................................................................................25

Certificate of Service ..............................................................................25

Certificate of Compliance ........................................................................26

# List of Authorities

**Cases**

*Ewing v. California*,
   538 U.S. 11 (2003) ........................................................................ 19

Graham v. Florida,
   560 U.S. 48 (2010) ........................................................................ 17

Harmelin v. Michigan,
   501 U.S. 957 (1991) ................................................................... 19, 24

Hutto v. Davis,
   454 U.S. 370 (1982) ...................................................................... 19

Miller v. California,
   413 U.S. 15 (1973) ......................................................................... 10

Puckett v. United States,
   556 U.S. 129 (2009) ...................................................................... 15

Rummel v. Estelle,
   445 U.S. 263 (1980) ................................................................... 18, 20

Solem v. Helm,
   463 U.S. 277 (1983) ............................................................. 16, 19, 24

United States v. Acuna,
   699 F. App'x 422 (5th Cir. 2017) .................................................. 13

United States v. Arthur,
   51 F.4th 560 (5th Cir. 2022) ......................................................... 10

United States v. Bokerman,
   543 F. App'x 974 (11th Cir. 2013) ................................................ 22

United States v. Dowell,
   771 F.3d 162 (4th Cir. (2014) ....................................................... 22

United States v. Johnson,
   451 F.3d 1239 (11th Cir. 2006) ........................................................... 23

United States v. Merritt,
   2022 WL 15798628 (5th Cir. 2022) ..................................................... 15

United States v. Mills,
   843 F.3d 210 (5th Cir. 2016) .................................................... 18, 20, 22

United States v. Moriarity,
   429 F.3d 1012 (11th Cir. 2005) ........................................................... 20

United States v. Neba,
   901 F.3d 260 (5th Cir. 2018) ............................................................... 20

United Sates v. Nix,
   2023 WL 3580703 (5th Cir 2023) ....................................................... 15

United States v. Ragsdale,
   426 F.3d 765 (5th Cir. 2005) ......................................................... 18, 21

United States v. Reedy,
   145 F. App'x 465 (5th Cir. 2005) .................................................. 22, 23

United States v. Rodriguez,
   15 F.3d 408 (5th Cir. 1994) ................................................................. 15

United States v. Romero-Cruz,
   201 F.3d 374 (5th Cir. 2000) ............................................................... 13

United States v. Ross,
   72 F.4th 40 (4th Cir. 2023) ...................................................... 19, 23, 24

United States v. Sullivan,
   895 F.2d 1030 (5th Cir. 1990) ...................................................... 15, 16

**Statutes**

18 U.S.C. § 1466.................................................................................... 7

18 U.S.C. § 3742.................................................................................... 1

28 U.S.C. § 1291.................................................................................... 1

**Rules**

Fed. R. App. P. 32 ............................................................................... 26

Fed. R. App. P. 34 ................................................................................ ii

## Jurisdiction

This is an appeal from a final judgment of the district court in a criminal case. The jurisdiction of this Court is invoked pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

## Statement of the Issue

Whether the district court's sentence, upon resentencing for eight counts of obscenity violations involving stories and drawings, towards the middle of his advisory sentencing guideline range, was grossly disproportionate and thus violated the Eighth Amendment.

## Statement of the Case

Offense Conduct

*Overview*

From on or about January 1, 1996, to on or about November 7, 2019, Thomas Alan Arthur ("Arthur") was the administrator of a website, www.mrdouble.com ("Mr. Double"), dedicated to publishing writings detailing the sexual abuse of children, including the rape, torture, and murder of infants and toddlers (ROA.1572). The stories on the website were organized according to the author who wrote the story (ROA.1572). Some of the author pages contained drawings depicting children

engaging in sexually explicit conduct (ROA.1572). All stories were submitted to Arthur through the website, and Arthur then published the stories on the website (ROA.1572). Arthur personally contributed two stories, describing the sexual abuse of children, to mrdouble.com (ROA.1572). While partial versions of the stories could be viewed by the general public, a paid membership was required to access complete versions of the stories (ROA.1572). The website displayed a feature that allowed members to see the most popular stories of the day (ROA.1572). Members could also search for stories by various topics (ROA.1572). The website also allowed for communication between authors and members via a forum (ROA.1572).

Arthur operated the website out of his home in Terlingua, Texas, but the website was hosted by a server in the Netherlands (ROA.1547). The website was Arthur's sole source of income, and he used the proceeds of the mrdouble.com website to purchase real and personal property (ROA.1572).

The website charged subscribers a fee to access what it claimed were more than 25,000 stories by more than 2,200 authors (ROA.1572). The website listed a copyright on the bottom of its homepage indicating

it had been active since 1996 (ROA.1572). Most of the stories on the website graphically described instances of rape, incest, and adults sexually abusing children, including infants and toddlers (ROA.1572). The website advised authors all genres of erotic stories were permitted (ROA.1573). It also instructed writers to put abbreviated codes with the title of their stories so readers can search for topics of interest. Examples of such topics of interest are as follows:

• "rape": "brutal non-consensual intercourse"

• "reluc": "starts out as rape, but she loves it"

• "snuff": "killing which is supposed to arouse you"

• "tort": "torture. Severe non-consensual spilling of blood-'n'guts"

• "nec": "necrophilia. Sex with a dead person."

• "inc": "incest"

• "ped": "pedophilia. Some participants age 12 or below."

Between September 24, 2019, and October 24, 2019, FBI agents, in an undercover capacity, accessed mrdouble.com using the credentials of a paid subscriber (ROA.1573). On October 24, 2019, an FBI agent downloaded five stories from mrdouble.com (ROA.1573). While downloading the stories, the agent observed that subscribers were able

to browse other stories (ROA.1573). The agent browsed the stories and observed they all involved the sexual abuse of a child (ROA.1573).

Although mrdouble.com featured numerous disclaimers indicating all of the stories were fictional, FBI agents determined a significant percentage of the subscribers had prior convictions for sex crimes against children (ROA.1573). In a preliminary investigation of 19 identified subscribers, the FBI agent identified nine of the 19 subscribers as registered sex offenders for child sex abuse, child pornography, or both (ROA.1573). A tenth subject was awaiting trial in a Utah state court for possessing child pornography and sexually abusing a child (ROA.1573). An eleventh subject was identified as a suspect in a 2007 FBI investigation into an online child pornography ring (ROA.1573).

The agent identified nine instances between 2004 and 2018 where the FBI was investigating a subject for child pornography and determined the subject was accessing mrdouble.com (ROA.1574). Eight of the subjects were eventually convicted of child pornography offenses, and the ninth subject committed suicide after the filing of an indictment (ROA.1574-75).

4

On October 24, 2019, an FBI agent accessed an author's individual page on mrdouble.com (ROA.1575). The agent observed a drawing, the subject of Count Seven (Drawing 2) of what appeared to be a naked prepubescent female masturbating (ROA.197-98, 1575). The drawing depicted the child's breasts and genitals in graphic detail (ROA.1575). Next to the drawing, the author wrote, "Welcome to my webpage. I specialize in stories about little girls having sex . . ." (ROA.1576).

On November 7, 2019, agents located two additional drawings on mrdouble.com depicting children engaging in sexually explicit conduct (ROA.1576). One drawing, titled "girls_suck," the subject of Count Eight (Drawing 3), resembled the Japanese *anime* drawing style and depicted three prepubescent females with pigtails each performing fellatio on an adult male penis (ROA.198, 1576). One of the females is performing fellatio on an adult male penis with a white substance on it (ROA.1576). Next to her, there is a white tube labeled "MILK." One of the females is squeezing a brown substance out of a brown tube labeled "CHOCOLATE" onto an adult male penis (ROA.1576). The third female is performing fellatio on an adult male penis with a white substance on it (ROA.1576).

The next drawing, titled "loadthemule," the subject of Count Nine (Drawing 4) depicted a blonde prepubescent female with pigtails lying on her stomach on a blue sheet (ROA.1576). She is performing fellatio on an adult male penis (ROA.1576). The adult male in the drawing is pulling on the female's pigtails while wearing brown work gloves (ROA.1576). The female's chest is visible and has no breast development (ROA.1576).

Counts Two through Six involved five stories downloaded from the website (ROA.1576). The first story "described, in graphic detail, three adult men vaginally and anally raping a female toddler" (ROA.1576). The third story involved similar conduct (ROA.1576). The second story involved a man having sex with his ten-year-old daughter (ROA.1576). The fourth story "described, in graphic detail, the narrator vaginally and anally raping his five-year-old daughter with a plastic bag over her head, until she 'went limp,' " followed by "engaging in necrophilia with the child's body in front of the child's mother" (ROA.1576-77). The fifth story described "an adult male vaginally raping a female toddler," where the child subsequently dies (ROA.1577). After a jury trial, Arthur was found guilty of the counts involving stories, for using an interactive computer service for carriage in commerce obscene matters, in violation of 18

U.S.C. § 1462(a), and three of the counts involving drawings, for production of visual depictions (drawings) of minors engaging in sexually explicit obscene conduct, in violation of 18 U.S.C. § 1466A(a)(1), as well as a count involving a drawing that was vacated on appeal (ROA.1571-72).

Initial (2021) Sentencing

Arthur's base offense level for engaging in the business of transferring obscene materials was 22 (ROA.1530). He received upward adjustments for: materials involving a prepubescent minor; distribution for pecuniary gain ($1,740,328); and utilization of multiple computers (ROA.1531). His total offense level was 42, criminal history category I, yielding an advisory guideline range of 360 months to life (ROA.1539). According to the PSR, "However, because the statutorily authorized maximum sentences are less than the maximum of the applicable guideline range; therefore, the guideline range is 360 months to 1,080 months" (ROA.1539).

At the sentencing hearing in 2021, the prosecutor asserted:

> With regards to the nature and circumstances of the offense, Your Honor, this is an unprecedented scale of obscenity crimes with over 20,000 stories that this Defendant

administered on his website. It's also an unprecedented level of depravity in an obscenity case in terms of the content.

As Your Honor well remembers, there were stories about raping pregnant mothers, ripping the fetus from the womb, and using the fetus "as a condom" to engage in the necrophilia of that mother. The depravity of that content is quite seriously unprecedented.

(ROA.1489).

The prosecutor also highlighted: as to Arthur's history and characteristics, Arthur's past conduct and bragging about his sexual interest in children (ROA.1490); as to the seriousness of the offense, Arthur's business lasting more than two decades, and creation of "an online community that celebrated and encouraged the exploitation of children" (ROA.1490); and as to prevention of unwarranted sentencing disparities, this was a unique obscenity case as the "volume of proliferation [was] staggering" (ROA.1492). The prosecutor recommended a guideline sentence (ROA.1494).

Defense counsel asked that Arthur be placed at "FCI Buckner to serv his sentence," and "ask[ed] the Court to consider an appropriate sentence within the statutory range for these offenses" (ROA.1487-88).

The court adopted the PSR (ROA.1485-86). The court found "the Guideline range in this case and each count to be fair and reasonable,"

and sentenced Arthur to serve terms of imprisonment : for Count One, 240 months; Count Two, 60 months, that term to run consecutively to the term of imprisonment in Count 1; Count Three, 60 months, that term to run consecutively to the term in Count Two; Count Four, 60 months to run  consecutively to the term of imprisonment in Count Three; Count 5, 60 months to run consecutively to Count Four; Count Six, 60 months to run concurrently with Count Five; Count Seven, 60 months to run concurrently to Count Six; Count Eight, 80 months to run concurrently to Count Seven; and Count Nine, 60 months to run concurrently to Count Eight (ROA.1494-95).

Arthur's total sentence of imprisonment for all counts was 480 months (ROA.1494-95).

Appeal and Remand

In Arthur's direct appeal, this Court: affirmed convictions as to the counts involving stories as being obscene in Counts Two through Six; affirmed the counts of obscene visual depictions, drawings, in Counts

Seven, Eight, and Nine, but reversed the visual depiction in Count One.[1]
*See United States v. Arthur*, 51 F.4th 560, 570-71 (5th Cir. 2022).

<u>2023 Resentencing</u>

At the 2023 resentencing hearing, the court found the PSR "to be accurate" and adopted it (ROA.1502-03). As in the first hearing, the court found the total base offense level to be 42, criminal history category I (ROA.1503). After Count One had been eliminated, Arthur's advisory guideline range for Counts Two through Nine was 360 to 840 months, bound, by the statutory maximums on the counts (ROA.1503).

The court resentenced Arthur to serve terms of imprisonment : for Count Two, 60 months; Count Three, 60 months, to run consecutively to

---

[1] This Court determined that as to Counts Two through Nine, "the stories and images in question, extreme and violent depictions of sexual attacks on children, are obscene." *Id*. at 570). The Court explained: "However, as to Count 1, on our independent, *de novo* review, we are not satisfied that the charged image, which was admitted at trial as Government's Exhibit 10A, is 'patently offensive' [*citing Miller v. California*, 413 U.S. 15, 24 (1973)].While the charged images in Counts 8 and 9 are both detailed, color, cartoon-like drawings depicting pre-adolescent girls being forced to perform fellatio on disembodied and engorged male genitalia, the charged image in Count 1 is a simple black and white pencil or charcoal drawing with minimal detail depicting an adolescent girl, alone, reclining and apparently masturbating. Importantly, unlike the children depicted in the images in Counts 8 and 9, there is no indication that the subject of the image in Count 1 is being forced to perform a sexual act. The drawing is simple and utterly lacking in violent depictions. Our independent constitutional review of the image charged in Count 1 leads us to the conclusion that it is not obscene under *Miller*. We therefore reverse Arthur's conviction on Count 1." *Id*. at 571.

the term in Count Two; Count Four, 60 months to run consecutively to the term in Count Three; Count Five, 60 months to run consecutively to the term in Count Four; Count Six, 60 months to run consecutively to the term in Count Five; Count Seven, 60 months to run consecutively to the term in Count Six; Count Eight, 120 months to run consecutively to the term in concurrently to Count Seven; and Count Nine, 60 months to run concurrently to Count Eight (ROA.1508-09).

Arthur received the same total sentence of imprisonment for all counts of 480 months (ROA.1508-09).

## Summary of the Argument

For approximately 23 years, Arthur was the administrator of a website dedicated to publishing writings, stories and drawings, detailing the sexual abuse of children, including the rape, torture, and murder of infants and toddlers. Based on consideration of the guidelines and the totality of the sentencing factors, the court initially arrived at a within-guidelines sentence, 480 months, it deemed appropriate. On remand, the elimination of one of the four 20-year maximum drawing counts, involving the least graphic and offensive drawing, did not for the court suggest a different sentence at resentencing, again based on Arthur

having the same advisory guidelines, and after considering all of the sentencing factors.

Arthur makes an "as applied" challenge to his sentence as being grossly disproportionate to his offenses and therefore argues on appeal that his sentence was in violation of the Eighth Amendment. However, a comparison of the gravity of the offenses and the severity of the sentence does not lead to an inference of gross disproportionality. Arthur's offenses, were not passive and depicted extreme violence towards children. Multiple obscenity cases involve offenses of the same gravity and sentences of similarity severity as Arthur's sentence. Based on precedent and the facts of the offenses, it could not be reasonably inferred that Arthur's forty-year sentence was grossly disproportionate to his offenses.

Because this was not one of the "rare cases" where there is an inference of gross disproportionality, Arthur's Eighth Amendment challenge to his sentence should be rejected.

## Argument and Authorities

**Where Arthur's correctly calculated advisory sentencing guidelines range for Counts Two through Nine was imprisonment for 360 months to 840 months, the district court's within-guidelines sentence of 480 months, the same sentence he received at the prior sentencing for Counts One through Nine, under the same advisory guidelines, was not a sentence grossly disproportionate to his crimes.**

(Responsive to Appellant's Brief, 8-20).

<u>Arthur's Only Claim</u>

Arthur's only claim on appeal is that the district court within-guideline sentence of 480 months was in violation of the Eighth Amendment as an extreme sentence grossly disproportionate to his crimes. Arthur does not challenge the guidelines calculations or argue that his within-guidelines sentence was procedurally or substantively unreasonable. There was no error under any applicable standard of review.

<u>The Standard of Review</u>

This Court reviews a properly raised constitutional issue, such as an Eighth Amendment claim, *de novo*. *United States v. Romero-Cruz*, 201 F.3d 374, 377 (5th Cir. 2000); *United States v. Acuna*, 699 F. App'x 422 (5th Cir. 2017).

Arthur claims to have raised an Eighth Amendment claim as to disproportionality at the resentencing hearing. The entire substance of defense counsel's single mentioning of the word "disproportionate," in response to the court's invitation to raise considerations as to sentencing, was as follows:

> Yes, Your Honor. One of the things that we discussed in the 5th Circuit was whether this case was amenable to a disproportionate sentence claim, specifically in light of the 5th Circuit's 2008 decision, United States V. Ragland, where the Defendant received eight years in a total sentence. I understand that the Government's position is going to be the difference between this case and Ragland is that Ragland was a possession case, and this case is a distribution case. However, looking at the remaining counts that are there, as I said, two of them, VIII and IX, are the only ones that have a minimum offense level of five years. And so I would ask the Court to assess the minimum punishment for both of those and run those concurrently. And then of course, there's a five-year maximum in the remaining counts. I'd ask the Court to assess the five-year maximum in those and run them all concurrently.

(ROA.1503-04).

At the resentencing hearing, the district court did not address or opine as to the concept of disproportionality.

Under Federal Rule of Criminal Procedure 52(b) plain-error review applies where an objection matter is not brought to the court's attention. The purpose of the plain-error-rule is to allow the trial judge the

opportunity to avoid or correct any error. *United States v. Rodriguez*, 15 F.3d 408, 417 (5th Cir. 1994) (citations omitted). Here, defense counsel's mentioning that "One the things that we discussed in the 5th Circuit was whether this case was amenable to a disproportionate sentence claim," did not give notice the district court of an Eighth Amendment claim at the resentencing hearing.

Plain-error review has been applied to an Eighth-Amendment disproportionality claim on appeal, *See, e.g. United Sates v. Nix*, 2023 WL 3580703, *2 (5th Cir 2023) (citation omitted); *United States v. Merritt*, 2022 WL 15798628, *2 (5th Cir. 2022).[2]

Nevertheless, under any standard of review, Arthur cannot establish a valid Eighth Amendment claim.

<u>Eighth Amendment Disproportionality Standards</u>

In *United States v. Sullivan*, 895 F.2d 1030 (5th Cir. 1990), this Court rejected appellant's argument that 75 months imprisonment and $290,000 in fines is so grossly disproportionate to the offenses of which

---

[2] Under this familiar standard, Arthur must show a forfeited plain error (clear-or-obvious error, rather than one subject to reasonable dispute) that affected his substantial rights. *Puckett v. United States*, 556 U.S. 129, 135 (2009). If he makes that showing, this Court has the discretion to correct the reversible plain error, but generally should do so only if it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id*. (citation omitted).

he was convicted as to constitute cruel and unusual punishment in contravention of the Eighth Amendment. *Id*. at 1031. This Court noted as a preliminary matter "the narrow scope of our review under the eighth amendment." *Id*.

This Court in *Sullivan* quoted the Supreme Court's guidance in *Solem v. Helm*, 463 U.S. 277 (1983), explaining, "Although no sentence is *per se* constitutional,

> [r]eviewing courts . . . should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes, as well as to the discretion that trial courts possess in sentencing convicted criminals. . . .
>
> Absent specific authority, it is not the role of an appellate court to substitute its judgment for that of the sentencing court as to the appropriateness of a particular sentence; rather, in applying the Eighth Amendment the appellate court decides only whether the sentence under review is within constitutional limits. In view of the substantial deference that must be accorded legislatures and sentencing courts, a reviewing court rarely will be required to engage in extended analysis to determine that a sentence is not constitutionally disproportionate."

*Sullivan*, 895 F.2d at 1032 (quoting *Solem*, 63 U.S. at 290, 290 n.16). The Court further explained, "We heretofore have emphasized our reluctance to limit legislative responses to criminal activity, and consistently have refused to disturb a trial court's sentence absent impermissible motives,

incorrect information, or, where applicable, noncompliance [with the sentencing guidelines]." *Id.* (citations omitted).

The Supreme Court has explained that the Eighth Amendment's "narrow proportionality principle" "does not require strict proportionality between crime and sentence," but "forbids only extreme sentences that are grossly disproportionate to the crime." *Graham v. Florida*, 560 U.S. 48, 59-60 (2010). To determine whether a defendant's sentence meets this standard, an appellate court follows a two-step test. First, the court conducts a "threshold comparison" of the gravity of the offense and the severity of the sentence" and asks whether that comparison "leads to an inference of gross disproportionality." *Id.* (citation omitted). This step is satisfied only in a "rare case." *Id.* If the court concludes that it can draw such an inference, it next compares the defendant's sentence "(1) to sentences for other offenses in the same jurisdiction; and (2) to sentences for similar offenses in other jurisdictions. *Id.* The sentence violates the Eighth Amendment only if that comparative analysis validates the inference of gross disproportionality. *Id.*

As explained by this Court, in determining whether a sentence violates the Eighth Amendment because it is unconstitutionally

disproportionate, a threshold comparison is made of the gravity of the offense against the severity of the sentence. *United States v. Mills*, 843 F.3d 210, 217 (5th Cir. 2016). Unless this Court finds gross disproportionality, this Court will not conduct a deeper inquiry into sentences for similar crimes. *Id.* This Court looks to *Rummel v. Estelle*, 445 U.S. 263 (1980), as a benchmark for Eighth Amendment proportionality. *Mills*, 843 F.3d at 217. In *Rummel*, 445 U.S. at 264-85, the Supreme Court rejected a disproportionate sentence challenge to a mandatory life sentence for obtaining $120.75 by false pretenses where the defendant had prior convictions for credit card fraud and a forged check.

<u>Arthur's Guideline Sentence Did Not</u>
<u>Violate the Eighth Amendment</u>

Arthur's sentence, towards the lower end of his advisory sentencing guideline range, did not violate the Eighth Amendment. Arthur has not cited a single post-*Solem* case reversing a sentence for being grossly disproportionate. The main case discussed by Arthur, *United States v. Ragsdale*, 426 F.3d 765 (5th Cir. 2005), upholding a 33-month sentence for selling obscene materials through the mail, did not involve the Eighth Amendment or a disproportionate argument.

Conversely, as noted by the court in *United States v. Ross*, 72 F.4th 40, 51 (4th Cir. 2023), the Supreme Court has identified a non-capital sentence as grossly disproportionate in just one case, where a repeat offender received a life sentence without parole for passing a bad check for $100. *Solem*, 463 U.S. at 296-97.[3] In reaching that conclusion, the Court emphasized that passing a bad check was "one of the most passive felonies a person could commit" and "involved neither violence nor threat of violence to any person." *Id.* Subsequently, the Court has rejected all other proportionality challenges to life sentences, consistently declining to draw the threshold inference of gross disproportionality. *See, e.g., Ewing v. California*, 538 U.S. 11, 28-30 (2003) (upholding sentence of twenty-five years to life under California's "three-strikes" law, where defendant's third offense was theft of $1,200 in golf clubs); *Harmelin v. Michigan*, 501 U.S. 957, 997 (1991) (Kennedy, J., concurring in part and concurring in the judgment) (upholding sentence of life without parole for first-time offender convicted of possessing 672 grams of cocaine); *Hutto v. Davis*, 454 U.S. 370, 374-75, (1982) (*per curiam*) (upholding forty-year

---

[3] The Court noted, "[o]utside the context of capital punishment, successful challenges to the proportionality of sentences [are] exceedingly rare." *Solem* 463 U.S. at 289-90.

sentence for possession with intent to distribute nine ounces of marijuana); *Rummel*, 445 U.S. 263, (rejecting proportionality challenge to mandatory life sentence under Texas recidivist statute for offense of obtaining $120.75 by false pretenses).

Here, Arthur's sentence was within the statutory maximum sentences for his offenses and thus within the legislative response to criminal activity.[4] Arthur received a sentence toward the lower end of his advisory sentencing guideline range. As noted above, an indicator of proportionality is the fact that his sentence was within his guideline range. Developed from empirical research with the goal of making the punishment fit the crime, the guidelines are a convincing objective indicator of proportionality. *Mills*, 843 F.3d at 218 (internal quotation marks and citation omitted). A sentence imposed within a properly calculated guideline range is presumptively reasonable. *United States v. Neba*, 901 F.3d 260, 263 (5th Cir. 2018).

---

[4] "In general, a sentence within the limits imposed by statute is neither excessive nor cruel and unusual under the Eighth Amendment." *United States v. Moriarity*, 429 F.3d 1012, 1024 (11th Cir. 2005) (citation omitted).

While Arthur attempts to compare his sentence to the sentence received by the defendant in *Ragsdale*, the cases are far from similar. The *Ragsdale* case did not involve children, production of materials, and only involved two obscene videos. *Ragsdale*, 426 F.3d at 769. As noted above, the overview of Arthur's criminal conduct in his PSR provided that for approximately 23 years, Arthur "was the administrator of a website dedicated to publishing writings detailing the sexual abuse of children, including the rape, torture, and murder of infants and toddlers" (ROA.1572).

As summarized by the prosecutor at the first sentencing hearing, this case involved "an unprecedented scale of obscenity crimes with over 20,000 stories that this Defendant administered on his website. It's also an unprecedented level of depravity in an obscenity case in terms of the content" (ROA.1489). Based on an exhibit containing only a "snapshot" of a few years, there were 32,3850,345 downloads "of this disgusting depraved stuff," which could be conservatively extrapolated to "above 100 million downloads" over the lifetime of the website. (ROA.1493).

As set forth above, in evaluating an Eighth Amendment proportionality challenge by this Court makes the threshold comparison

between the gravity of the charged offenses and the severity of the

sentences. As discussed above, the charged offenses and Arthur's conduct

were indeed grave. Arthur's forty-year sentence was not overly severe

and not grossly disproportionate when measured against the benchmark

in *Rummel*, involving a mandatory life sentence for obtaining $120.75 by

false pretenses where the defendant had prior fraud convictions, and no

deeper inquiry is necessary. Accordingly, Arthur's Eighth Amendment

claim fails. *See Mills*, 843 F.3d at 217.[5]

Even proceeding to the stage of further comparison, Multiple

obscenity and pornography cases involve sentences that are comparable

to Arthur's sentence. See *United States v. Bokerman*, 543 F. App'x 974

(11th Cir. 2013) (sentence of 324 months for possessing and transporting

child pornography was not grossly disproportionate to the offense, and

thus, was not cruel and unusual, in violation of Eighth Amendment as

sentence fell within statutory limits of offenses and was at bottom of the

_____

[5] *see also*, *United States v. Reedy*, 145 F. App'x 465, 467 *3 (5th Cir. 2005) (imposition
of life sentence for child pornography based on defendant providing credit card
verification services for those purchasing pornography and conspiracy to transport
child pornography not plain error violation of the Eighth Amendment, even though
defendant had no prior convictions; *United States v. Dowell*, 771 F.3d 162, 168–69
(4th Cir. (2014) (emphasizing harm caused by exploitation and molestation of a young
child in holding that defendant's 960-month sentence for producing child
pornography did not give rise to threshold inference of gross disproportionality).

guidelines range of 324 to 405 months, and defendant, who was registered sex offender, took and transported images of 13 minor children, some under age of 12, engaged in sexually explicit conduct); *United States v. Johnson*, 451 F.3d 1239, 1243 (11th Cir. 2006) (rejecting a proportionality challenge to a defendant's 140-year sentence, which was within statutory limits, for multiple child pornography offenses and holding that imposing multiple consecutive statutory maximum terms to fulfill a guideline recommendation constitutes a sentence within the statutory maximum); *Reedy*, 145 F. App'x at 467 *3 (5th Cir. 2005) (imposition of life sentence for child pornography based on defendant providing credit card verification services for those purchasing pornography and conspiracy to transport child pornography was not a plain error violation of the Eighth Amendment, even though defendant had no prior convictions); and *Ross*, 72 F.4th at 50-51 (rejecting Eighth Amendment challenge to 55-year sentence, functionally equivalent to a life sentence, for producing and possessing child pornography.

Although Arthur questions the "math" in receiving the same total sentence, the district court's analysis was reasonable. Based on consideration of the guidelines and the totality of the sentencing factors,

the court initially arrived at a sentence, 480 months, within the advisory guidelines, it deemed appropriate. The elimination of one of the four 20-year maximum drawing counts, the least graphic and offensive one, did not for the court suggest a different sentence at resentencing, again based on Arthur having the same advisory guidelines, and after considering all of the sentencing factors.

Arthur's offenses, were far from "one of the most passive felonies a person could commit." *See Solem*, 463 U.S. at 296. Further, his offenses depicted violent conduct. *Id*. Based on precedent and the facts of the offenses, it could not be reasonably inferred that Arthur's forty-year sentence was not grossly disproportionate to his offenses. Even if it is assumed that his sentence is the functional equivalent of a life sentence, his child obscenity offenses are at least as grave as the drug offense in *Harmelin*, which the Supreme Court deemed sufficiently egregious to justify a life sentence. See *Ross*, 72 F.4th at 51.

If there is a disparity in Arthur's sentence, it is not great and represents a not-unreasonable balancing of the 18 U.S.C. § 3553(a) factors, thereby reflecting the severity of the offense and history of the defendant. Because this was not one of the "rare cases" where there is an

inference of gross disproportionality, Arthur's Eighth Amendment challenge to his sentence should be rejected.

## Conclusion

For the foregoing reasons, Appellant's sentence should be affirmed.

Respectfully submitted,

Jaime Esparza
United States Attorney

By:  *s/ Mark Randolph Stelmach*
Mark Randolph Stelmach.
Assistant United States Attorney

## Certificate of Service

I hereby certify that on the 27th day of October 2020, I filed this document with the Fifth Circuit Court of Appeals using the CM/ECF filing system, which will cause a copy to be delivered to Appellant's counsel.

*s/ Mark Randolph Stelmach*
Assistant United States Attorney

## Certificate of Compliance

I hereby certify, on October 27, 2020, that

    1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 4,808 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

    2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Century Schoolbook.

*s/ Mark Randolph Stelmach*
Assistant United States Attorney